# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 7 |
| WILLIAM C. TAPPLY, | ) Case No. 21-40864-EDK |
|  | ) |
| Debtor | ) |
|  | ) |

## MEMORANDUM OF DECISION

Before the Court is a motion filed by the United States Trustee (the "Trustee") to dismiss the Chapter 7 bankruptcy case filed by William C. Tapply (the "Debtor") pursuant to §§ 707(b)(1) and (2) of the United States Bankruptcy Code[1] (the "Motion"). In determining whether the Court should grant the Trustee's Motion and dismiss the case, the Court must determine whether granting Chapter 7 relief to the Debtor is presumed to be an abuse of Chapter 7 and, if so, whether the Debtor has rebutted that presumption. For the reasons set forth herein, the Court concludes that based on the evidence provided, the Motion must be granted and the Debtor's bankruptcy case will be dismissed.

I. FACTS AND TRAVEL OF THE CASE[2]

On November 24, 2021, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor is an individual with primarily

---

[1] *See* 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code"). All references to statutory sections are to provisions of the Bankruptcy Code unless otherwise stated.

[2] The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this matter by Federal Rules of Bankruptcy Procedure 1017(f), 7052, and 9014 (c). The facts are drawn from the testimony at the evidentiary hearing, admitted evidence, the facts stipulated to by the parties, and matters of record of which the Court may take judicial notice.

1

consumer debts, who is married and resides with his spouse (the "Spouse") and three children. The Debtor's scheduled nonpriority unsecured (and presumably dischargeable) debt totals $116,130. On Schedule I, the Debtor indicated that he was employed by Maki Building Centers, Inc. and the Spouse was employed as a teacher. Based on the Debtor's originally filed Schedules I and J, after deducting expenses including payments for the Spouse's credit cards and real estate, the Debtor's monthly net income was negative $3,277. On the Debtor's Official Form 122A-1: Chapter 7 Statement of Your Current Monthly Income, the Debtor reported the "current monthly income" ("CMI") multiplied by 12 for the resulting annual income was in excess of the applicable state median income and indicated that the presumption of abuse was determined by Official Form 122A-2: Chapter 7 Means Test Calculation (the "Means Test"). On his Means Test, the Debtor claimed a marital adjustment for expenses related to the Spouse's real property and asserted that the Spouse's "credit card agreement" constituted a special circumstance justifying an additional monthly expense or income adjustment. However, despite these adjustments, based on the Means Test calculation, the Debtor's monthly disposable income amount still gave rise to a presumption of abuse.

In keeping with the Trustee's statutory duties under § 704(b)(1)(A), the Trustee filed a statement that the Debtor's case was presumed to be an abuse under § 707(b). Thereafter, the Trustee filed the Motion, requesting dismissal of the case based on the presumption of abuse absent a showing of special circumstances under § 707(b)(2)(B). The Debtor objected to the Motion, asserting that no presumption of abuse exists or, in the alternative, that special circumstances exist to rebut the presumption of abuse. The Court conducted an evidentiary hearing on November 10, 2022 and heard the testimony of the Debtor and Steven M. Potkonjak ("Potkonjak"), an analyst employed by the Trustee, both of whom were forthright and credible.

Based on Potkonjak's review of the Debtor's and the Spouse's paystubs and payroll register provided to the Trustee, Potkonjak testified that the presumption of abuse arose in the Debtor's case, even after making some adjustments to the Debtor's and the Spouse's CMI, the marital adjustments, special circumstances, and various expenses.

The primary issue for the Debtor were those expenses which the Trustee insisted should not be used to reduce CMI as marital adjustments or deducted from the monthly disposable income for 60 months as special circumstances – namely, payments for the son's college tuition, the daughter's dance, and the Spouse's credit card payments.  The Debtor testified that although he has access to the Spouse's bank account and can view account activity online, he has no control over the Spouse's payment of their son's college tuition and their daughter's dance.  While the Debtor indicated that he and the Spouse discuss payment of some expenses, the Debtor did not tell or try to persuade the Spouse that the Spouse should not pay for their son's college tuition. According to the Debtor, the Spouse determines the amount of money that is appropriate for expenses that the Spouse decides to pay and has not agreed to contribute to financial obligations for which the Debtor is solely responsible.

At the conclusion of the evidentiary hearing, the Court took the matter under advisement, gave the parties the opportunity to file further post-trial briefs (which both have done), and ordered the Debtor to file an amended Means Test consistent with the Debtor's position regarding claimed deductions and the figures that the Court should consider.  Consequently, the Debtor filed amended Forms 122A-1 and 122A-2 (hereinafter, the Court will refer to both forms together as the "Amended Means Test").  On the Amended Means Test, the Debtor disclosed an increased total CMI and annualized CMI consistent with Potkonjak's CMI calculation.  The Debtor then claimed various marital adjustments to monthly income including, *inter alia*, adjustments on account of

the Spouse's credit card payments, the daughter's dance, and the son's college tuition, resulting in an adjusted CMI of $13,521.35. On Part 3 of the Amended Means Test, the Debtor subtracted expenses totaling $13,576.70 from the adjusted CMI, reported negative monthly disposable income of $55.35, and indicated that the presumption of abuse does not arise. And while not applicable to cases where the presumption of abuse does not arise, the Debtor also claimed special circumstances adjustments, including an adjustment for the Spouse's "refusal to pay Debtor's debts." Amended Means Test, Dec. 8, 2022, ECF No. 60.

## II.    POSITIONS OF THE PARTIES

### A. The Trustee

In the Motion, the Trustee initially sought dismissal pursuant to §§ 707(b)(1) and (2) based on the Trustee's calculation of the Debtor's CMI and the presumption of abuse that arose after applying the Debtor's deductions as claimed on the Means Test. However, the Trustee reserved the right to challenge the Debtor's Means Test deductions if it became relevant, appropriate, and material to do so. The Trustee now argues that the presumption of abuse still arises on the Amended Means Test after eliminating improper marital adjustments and the Debtor has not rebutted that presumption due to improper adjustments based on special circumstances. According to the Trustee, the marital adjustments for the Spouse's use of funds to pay for the daughter's dance and the son's college tuition are impermissible since they constitute household expenses. The Trustee also asserts that the Debtor's marital adjustment for the Spouse's credit card payments should be disallowed since the Debtor has failed to establish that the credit card charges were purely personal to the Spouse and not for household expenses. Consequently, the Trustee argues, the Court need not consider the propriety of other expenses claimed and deducted by the Debtor,

4

as the presumption of abuse arises (and is not rebutted) when accounting for the funds currently being used to pay for the daughter's dance, the son's college tuition, and Spouse's credit card payments.

With regard to the Debtor's "special circumstances" argument, the Trustee maintains that the onus is on the Debtor to rebut the presumption of abuse by demonstrating special circumstances pursuant to § 707(b)(2)(B), which the Debtor has failed to do. To establish special circumstances, the Trustee asserts, § 707(b)(2)(B)(ii) requires the Debtor to sufficiently itemize and document the expenses or income adjustments and provide a detailed explanation of the special circumstances that make those expenses or income adjustments necessary and reasonable. Regarding the Debtor's claim that his Spouse's refusal to pay the Debtor's debts constitutes a special circumstance, the Trustee points to the Debtor's failure to explain which of the Debtor's debts are at issue and notes that the amount claimed as a special circumstance for the Spouse's refusal to pay the Debtor's debts is identical to the Debtor's claimed marital adjustment (which includes impermissible deductions for the Spouse's credit card payments, the daughter's dance, and the son's college tuition). In addition to the lack of required itemization, documentation, and explanation, the Trustee contends that allowing the Spouse's refusal to contribute to the Debtor's hypothetical Chapter 13 plan as a special circumstance would permit the Debtor to circumvent the definition of CMI. The Trustee requests that the case be dismissed in light of the Debtor's failure to rebut the presumption of abuse that arises in this case.

**B. The Debtor**

In the Debtor's opposition to the Motion, the Debtor initially asserted that, after accounting for $350 of additional expenses that were either omitted or understated on the Means Test or newly incurred, the presumption of abuse does not arise or, in the alternative, that special circumstances

5

justify denying the Motion.  The Debtor now claims that, after considering the marital adjustment with the other claimed expenses deductions set forth on the Amended Means Test, the presumption of abuse does not arise.

According to the Debtor, the Bankruptcy Code, particularly § 707, limits some of a debtor's expenses to IRS standard expense amounts but places no limitations on a non-filing spouse's expenses.  Therefore, the Debtor argues, a marital adjustment for the Spouse's use of funds for any purpose "other than expenses normally considered household expenses" is allowed.  Debtor's Post-Trial Brief, 2, Dec. 8, 2022, ECF No. 59.  Should the Court determine that the payment of the Spouse's credit cards, the daughter's dance, and/or the son's college tuition constitute payment of household expenses and therefore are not allowed as a marital adjustment, the Debtor asserts that those expenses should be considered as special circumstances that rebut any presumption of abuse.  Noting that the term "special circumstances" is not defined in the Code, the Debtor contends that the Spouse's actual use of the Spouse's funds to pay expenses not shared with the Debtor and the Spouse's refusal to contribute to the Debtor's payment of his obligations constitutes a special circumstance justifying an income or expense adjustment.  And after taking into account the amount of the Spouse's income that is not contributed to what the Debtor deems are household expenses, the Debtor argues that he has no disposable income to pay his creditors and the Motion should be denied since relief under Chapter 7 is justified.[3]

---

[3] The parties also dispute whether the Debtor can claim an additional $841 monthly housing cost in excess of the applicable standard (for home energy costs) in the Amended Means Test.  The Trustee argues that the Debtor failed to adequately itemize, document, and explain the excess costs as a special circumstance (and which the Debtor also deducted as an expense for additional home energy costs in the Amended Means Test).  According to the Trustee, the means test statutory scheme under § 707(b)(2) would essentially be nullified if certain costs are accepted as special circumstances solely because they exceed the applicable expense standards.  The Debtor says that the Debtor's testimony and the admitted evidence prove that his housing and utility costs are significantly higher than the applicable standard expense amount and asserts that the $841 expense deduction for additional home energy costs should be allowed.  Ultimately, for the

6

III. <u>DISCUSSION</u>

Under § 707(b)(1) a Court may, on a motion by the United States Trustee, dismiss the Chapter 7 case of an individual with primarily consumer debts if it finds that the granting of bankruptcy relief would be an abuse of Chapter 7. 11 U.S.C. § 707(b)(1). And the Court must presume that such abuse exists if the Debtor's "current monthly income" (CMI) [4] minus the allowed expenses under §§ 707(b)(2)(A)(ii), (iii), and (iv) over 60 months, is not less than the lesser of: (i) 25% of the Debtor's nonpriority unsecured claims in the case or $8,175, whichever is greater, or (ii) $13,650. 11 U.S.C. § 707(b)(2)(A)(i).

For a Chapter 7 debtor whose CMI multiplied by 12 exceeds the applicable state median income, the "means test" is a formulaic computation of the debtor's income and expenses that the debtor must use to determine whether there is a presumption of abuse warranting dismissal of the case. William L. Norton, Jr. and William L. Norton III, *Norton Dictionary of Bankruptcy Terms* (Thomson Reuters, 2012); *see also* 11 U.S.C. § 707(b)(2)(A). For purposes of the means test, the expenses an above-median income debtor can claim on the means test are not simply the Debtor's

---

reasons set forth in this Memorandum, the Court finds it unnecessary to resolve this particular dispute.

[4] Pursuant to § 101(10A),

> The term "current monthly income" –
>
> (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current monthly income required by section 521(a)(1)(B)(ii); . . . and
>
> (B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . .

11 U.S.C. § 101(10A).

actual expenses, but are dictated by §§ 707(b)(2)(A)(ii), (iii) and (iv), which limit certain expense amounts to those specified under National and Local Standards issued by the Internal Revenue Service and allows for the debtor's actual monthly expenses for certain specified categories. 11 U.S.C. § 707(b)(2)(A). Consequently, even where an above-median income debtor's Schedules I and J reflect actual negative monthly income, the Court must analyze the means test to determine whether the case should be dismissed.

### A. Marital Adjustment

Consistent with the § 101(10A) definition of CMI, the Means Test form requires a married debtor who resides with their spouse to report all of the non-filing spouse's income in the relevant 6-month time frame and then permits a debtor to deduct that portion of the non-filing spouse's income that is not regularly contributed to the household expenses of the debtor and the debtor's dependents. "Thus, a non-filing spouse's income may only be excluded from a debtor's disposable income analysis to the extent that the income is used to pay *non-household* expenses, i.e., expenses that are purely personal to the non-debtor spouse. This is the so-called 'marital adjustment' or 'marital deduction.'" *In re Montalto*, 537 B.R. 147, 149 (Bankr. E.D.N.Y. 2015).

On the Amended Means Test filed after trial, the Debtor listed CMI of $15,148.35, consistent with the Trustee's calculations.[5] Before analyzing the Debtor's means test expenses, the Court must first consider the Debtor's claimed marital adjustments to the CMI totaling $1,627, including adjustments of $464 for payments on the Spouse's credit cards, $90 for the daughter's dance, and $833 for the son's college tuition, which the Debtor applied to reduce the total CMI to $13,521.35 before deducting means test expenses to ultimately calculate the Debtor's monthly

---

[5] Because the Court ordered the Debtor to file an amended Means Test consistent with the Debtor's position regarding deductions and the figures the Court should consider, the Court will rely on the CMI, marital adjustment, expense deductions, and special circumstances adjustments listed on the Amended Means Test for purposes of this Decision.

8

disposable income and determine whether the presumption of abuse arises. The Trustee argues that the Debtor cannot use expenses for Spouse's credit cards, the daughter's dance, and the son's college tuition as marital adjustments to reduce total CMI.[6]

In *Montalto,* the United States Trustee (the "UST") challenged the debtor's marital adjustment (for monthly payments of the non-filing spouse's business expenses, credit cards, and 401k loan) on the basis that the debtor failed to substantiate the business expenses or to identify the amount of 401k loan proceeds used and credit card charges incurred for non-household expenses. *Montalto*, 537 B.R. at 155-156. The debtor argued that the payments could be deducted as a marital adjustment since the non-filing spouse made the payments and maintained that the UST bore the burden of proving that the expenses or payments were for household expenses. *Id*. The *Montalto* court adopted the approach that presumes, except where spouses maintain separate households, that all of a non-filing spouse's income is contributed to household expenses except for specific expenses that the *debtor* can prove are strictly personal as to the non-filing spouse. *Id*. at 149. The court recognized that a debtor and non-filing spouse have almost exclusive control over the evidence required to determine whether some expenses are household or non-household and held that if the movant makes a prima facie case that the debtor is improperly excluding some of the non-filing spouse's income (as a non-household marital adjustment) such that a presumption of abuse arises, the burden of proof then shifts to the debtor to prove that some or all of the marital adjustments were for non-household expenses. *Id* at 149, 154.

Having found no case law in the First Circuit regarding which party bears the burden of proof as to the marital adjustment, the Court agrees with the logic of the *Montalto* court and holds

---

[6] While not conceding that the Debtor's other claimed marital adjustments (for expenses related to the Spouse's real property and the Spouse's continuing education) are appropriate, the Trustee has not challenged those deductions.

9

that because the Debtor and the Spouse do not maintain separate households, all of the Spouse's income is presumed to be contributed to household expenses. Therefore, if the Trustee makes a prima facie case that the Debtor is improperly excluding some of the Spouse's income such that a presumption of abuse arises, the Debtor must prove that the challenged marital adjustments are for non-household expenditures.

The Trustee argues that the daughter's dance and the son's college tuition clearly constitute household expenses since those payments are for the benefit of the debtor's dependents and, consequently, that the funds used to make those expenditures may not be excluded as a marital adjustment when calculating the Debtor's adjusted CMI. Asserting that the daughter's dance and the son's college tuition are not considered normal household expenses, the Debtor argues that a marital adjustment for the Spouse's use of funds to pay those expenses is allowed. However, the Debtor cites no law to support this interpretation of the marital adjustment.

While the Code defines CMI to include "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ," 11 U.S.C. § 101(10A)(B), the Code does not define which expenses constitute "household expenses." However, bankruptcy courts have looked to the definition of CMI to determine that the marital adjustment is based on the nature of the debt or expense rather than who is legally liable for it and have held that "[a]n expense paid by the non-debtor spouse will be considered a household expense, and thus included in income on the means test, unless the expense is 'purely personal' to the non-debtor spouse." *In re Persaud*, 486 B.R. 251, 262 (Bankr. E.D.N.Y. 2013) (citing *In re Rable*, 445 B.R. 826, 829 (Bankr. N.D. Ohio 2011)); *see also Montalto*, 537 B.R. at 149. In *Persaud*, the court considered whether a debtor could deduct as a marital adjustment the college and private school tuition expenses for the debtor and non-filing spouse's children, which

only the non-filing spouse was contractually liable for and which were paid from the non-filing spouse's individual bank account. Because the tuition payments were for the benefit of the debtor's dependents and therefore not purely personal to the non-filing spouse, the court disallowed the debtor's marital adjustment. *Id*. at 263.

This Court agrees with the rationale and holding of the *Persaud* court and rules that the marital adjustment is limited to a non-filing spouse's expenses that are purely personal to the non-filing spouse. Regarding their daughter's dance, the Debtor testified that the Spouse makes those payments. The Debtor also testified that the Spouse pays $5,600 per semester for their son's college tuition. While the Trustee does not dispute that the dance and college tuition expenses were paid by the Spouse with the Spouse's funds, the determinative factor is that both expenses were for the benefit of the Debtor's dependents and not purely personal to the Spouse. Consequently, this Court will disallow the Debtor's marital adjustments of $90 for the daughter's dance and $833 for the son's college tuition.

The Trustee maintains that the Debtor's marital adjustment for the Spouse's credit card payments is also inappropriate because the Debtor has failed to establish that the Spouse's credit card debt was incurred for expenses purely personal to the Spouse and not for household expenses. According to the Trustee, allowing a debtor to claim a marital adjustment for payment of a non-filing spouse's credit card debt incurred for household expenses that are deducted elsewhere in the means test permits double-dipping of expenses. The Debtor contends that payment of a non-filing spouse's credit card debt is not normally considered a household expense and therefore constitutes an appropriate marital adjustment. Since this Court finds that the Trustee has made a prima facie case that the credit card payment marital adjustment is inappropriate, the Debtor now bears the burden to show that the credit card payments represent expenses purely personal to the Spouse.

11

The Debtor provided no evidence to show that the Spouse's credit card debt was incurred for expenses purely personal to the Spouse. Therefore, the Court will also disallow the $464 marital adjustment for the Spouse's credit cards.

Due to the disallowance of the Debtor's marital adjustments for the Spouse's credit cards and the Spouse's payment of the daughter's dance and the son's college tuition, the Debtor's adjusted current monthly income is $14,908.35. After deducting the Debtor's claimed means test expense deductions of $13,576.70, the Debtor's monthly disposable income is $1,331.65, resulting in a 60-month disposable income of $79,899, which far exceeds the $13,650 necessary to trigger the presumption of abuse pursuant to § 707(b)(2)(A)(i).[7] Accordingly, the Court finds and rules that the presumption of abuse has arisen in the Debtor's case.

### B. Special Circumstances

The parties agree that, once the presumption of abuse arises, the Debtor bears the burden of showing that special circumstances exist to rebut that presumption. According to the Debtor, "special circumstances" do exist to rebut the presumption – namely, the Spouse's refusal to contribute the amount that the Spouse pays per month for certain expenses, including the Spouse's credit cards, the daughter's dance, and the son's college tuition, toward payment of the Debtor's debts.[8] Section 707(b)(2)(B) provides that ". . . the presumption of abuse may only be rebutted by

---

[7] Pursuant to § 707(b)(2)(A)(i), the presumption of abuse arises if the Debtor's monthly disposable income multiplied by 60 is not less than the lesser of a) 25% of debtor's nonpriority unsecured debt (in this case, $29,032.50) or $8,175, whichever is greater, or b) $13,650.

[8] Since the special circumstances adjustment amount for the Spouse's refusal to pay Debtor's debts mirrors the marital adjustment amount, which also includes payments for the Spouse's property and continuing education, the Court will assume that the Debtor also argues that the Spouse refuses to contribute the funds used to pay for those expenses. However, the Spouse's funds used to pay for the Spouse's property and continuing education have already been treated as unavailable to pay the Debtor's debts via a marital adjustment reduction to CMI and will not be further deducted from the Debtor's monthly disposable income.

12

demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B). While the examples set forth in § 707(b)(2)(B) are illustrative rather than exhaustive, § 101(10A) makes clear that a non-filing spouse's income that is regularly contributed to the household expenses of the debtor or the debtor's dependents is included in CMI regardless of whether the non-filing spouse chooses to make that income available to help pay the debtor's debts or fund a Chapter 13 plan. And "the 'special circumstances' exception cannot be used to circumvent the definition of CMI as set forth § 101(10A)." *Persaud*, 486 B.R. at 264. In *Persaud*, the debtor argued that the debtor's lack of control over a majority of the household income, which may be unavailable to fund a Chapter 13 plan, constituted a special circumstance. The *Persaud* court rejected the debtor's position and held that allowing debtors to exclude amounts based on the non-debtor's refusal to make those funds available to fund a Chapter 13 plan would allow debtors to evade "the statutory inclusion of those amounts in disposable income under § 101(10A)." *Id*. This Court agrees with the *Persaud* court and finds that the Spouse's refusal to contribute funds to pay the Debtor's debts does not constitute a special circumstance and the Debtor may not claim the related $1,627 adjustment to disposable income.[9]

Pursuant to § 707(b)(2)(B)(iv), this Debtor may only rebut the presumption of abuse if the Debtor's allowed special circumstances adjustments reduce the Debtor's monthly disposable

---

[9] The Debtor testified that his Spouse would not agree to pay obligations that she was not liable for. However, any implication that the Spouse is paying for the daughter's dance and the son's college tuition without the agreement of the Debtor was not borne out by the testimony. In fact, the Debtor testified in the context of their children's expenses, "we work together." Nov. 10, 2022 Trial Tr. 71:5, ECF No. 57.

income to an amount that when multiplied by 60 is less than $13,650.[10] The Debtor claimed an additional special circumstance for "necessary housing costs in excess of IRS standard" in the amount of $841. However, the Debtor included this expense in Part 2, line 10 of the Amended Means Test and therefore it will not be further deducted from the Debtor's monthly disposable income. If the Court allows the Debtor's remaining claimed special circumstance of $172 for "sewer assessment and bank charges" (which the Trustee did not challenge), the Debtor's monthly disposable income is reduced to $1,159.65 and results in 60-month disposable income of $69,579. Without the $1,627 special circumstance downward adjustment to disposable income, the Debtor fails to rebut the presumption in this case that granting the Debtor relief under Chapter 7 would be an abuse of the Bankruptcy Code.

IV.     CONCLUSION

For the reasons set forth above, the Court finds and rules that the presumption of abuse arises pursuant to § 707(b)(2)(A) and that the Debtor has failed to rebut the presumption that the granting of relief under Chapter 7 is abusive. To be clear, this Court is not suggesting that it may order a non-filing spouse to contribute to a debtor's Chapter 13 plan and is aware that some debtors may find themselves in the unenviable quandary of being legally ineligible for relief under Chapter 7 but unable to fund a Chapter 13 plan in reality. However, a debtor's inability to confirm a hypothetical Chapter 13 plan does not render the debtor entitled to relief under Chapter 7.[11] Furthermore, the Debtor has not offered or requested an opportunity to convert this case to one

---

[10] Pursuant to § 707(b)(2)(B)(iv), the presumption of abuse is only rebutted if special circumstances adjustments to income cause the Debtor's monthly disposable income multiplied by 60 to be less than the lesser of a) 25% of debtor's nonpriority unsecured debt (in this case, $29,032.50) or $8,175, whichever is greater, or b) $13,650.

[11] *See In re Corridori,* No. 10-41645-MSH, 2010 WL 3522122 at *2 (Bankr. D. Mass. Sept. 1, 2020).

under Chapter 13. Accordingly, the Trustee's motion will be granted, and this case will be dismissed pursuant to §§ 707(b)(1) and (2).[12] An order in conformity with this Memorandum will issue forthwith.

Dated: July 5, 2023

/s/ Elizabeth D. Katz
Elizabeth D. Katz
United States Bankruptcy Judge

---

[12] In light of the dismissal of the case, the Trustee's request in the Motion to extend the deadline to object to discharge pursuant to § 727 or to file a motion pursuant to §§ 707(b)(1) and (3) is moot.

15